The decree of his Honor is as follows:
Christian Breithaupt, late of Edgefield District, by a deed of trust, executed previously to his will hereafter mentioned, gave a certain portion of his estate, consisting of lands and slaves in Alabama, to Mary Ingram, a woman with whom he had lived in adultery, and to his three natural children by her. By his will, executed in 1831, he made the following dispositions, which it will be sufficient to state in substance and effect.
*466 He confirms the deed executed in Alabama, with some modifications, giving certain slaves included in it to his natural daughters Anna E. and Sarah L. residing in this State, and the rest of the property to Mary Ingram and the youngest daughter, Susan, who lived with her. He gives to his executors six hundred and seventy acres of land and thirteen slaves, in trust tor his two natural daughters, Anna E. and Sarah L. He gives to his wife Gertrude Jacoba Breithaupt, certain tracts of land, said to contain about 2400 acres, and fifty eight slaves, with other property, for life, and after her death, to his executors, in trust to settle the said lands and slaves on his daughters Anna E. and Sarah L. in the manner pointed out. He directs his executors to sell certain lands and slaves, the proceeds of which, together with moneys due to him, he makes a fund for the payment of his debts and legacies; “the balance, if any, my executors are to vest in Bank Stock ; and all other property which has not been conveyed by me in trust, or is not devised in this will, or any that may revert to my estate, is to be sold, and the amount to be remitted, in undoubted bills of exchange, to my brother Ferdinand Breithaupt, in Mihla, near Eisenach in Saxony, or in case of his death, to my brother, Professor Augustus Briethaupt, in Fregburg in Saxony, to be divided in the manner following: Two shares to my brother Charles, or his legal representatives ; two shares to the children of my deceased brother Earnest; oen share to my brother Ferdinand or his legal representatives ; one share to my brother Augustus or his legal representatives, and one share to my sister Frederica or her legal representatives, making and constituting them, in the proportions before mentioned, and in every resped to all interests and purposes, my residuary legatees.” He further provides that “ if any person or persons to whom I have devised property in this will, shall disturb the same, or anywise interfere or object to the provisions made therein, then he, she or they, shall be entirely deprived and excluded from the devise or bequest I have made for his, her or their benefit.”
The testator had no legitimate children. His wife was living at the time of making the deed and will, and survived him a few weeks. Administration on her estate has been granted to the complainant. The bill is against the executors, the donees under the deed, and the devisees under the will — charging that the property given by the testator to his mistress and illegitimate children, far exceeds the fourth part of his estate, and *467 that the gifts are void for the overplus, under the Act of Assembly of 1795. The first question made was, whether the Act of Assembly can apply to any person who was not an inhabitant of this State at the time of its passage. The evidence seems to shew that the testator was not an inhabitant of the State at that time. The terms of the Act are, that “ if any person who is an inhabitant of this State” shall settle or convey, <&c. from which it was argued, that they could not apply to any person thereafter to become an inhabitant of the State. But this would be a narrow method of construction, certainly not tending to suppress the mischief and advance the remedy contemplated by the statute. The obvious meaning is, “ if any person who is an inhabitant of the State at the time of the gift or conveyance a form of expression not, perhaps, of the strictest grammatical propriety, but by no means an unusual one. The next question argued, was whether the deed or will must be regarded as absolutely void under the Act, or only voidable, and valid until the wife or legitimate children shall declare their election to avoid it ; and if so, whether it is not a privilege personal to them; and whether, in this case, the personal representative of the wife can make that election after her death. The words of the Act are that “ such deed of gift, conveyance, legacy or devise, made or hereafter to be made, shall be, and is hereby declared to be, null and void, for so much of the amount or value thereof as shall or may exceed such fourth part of his real and personal estate.” I am of opinion, notwithstanding the terms of the Act, that we must regard the gift or instrument as voidable only, and valid until the parties properly entitled come to avoid it — and it is absolutely impossible to make any other construction, consistently with the meaning and purposes of the Act.
The subject was much considered in the case of Anderson vs. Roberts, 18 Johns. Rep. 515. That was a case under the stat. 13 Eliz. c. 5, declaring that gifts made to defraud creditors shall be utterly void. The question was, whether a bona fide purchaser, from a fraudulent grantee, should be protected against creditors. If the first deed were absolutely void, the grantee had no title and could convey none. It was held that he should be protected. It is true that this was held to come within the proviso of the statute, that it should not be taken to extend to conveyances, made bona fide and upon good consideration, to a purchaser without notice — but this was according to the common *468 law and the course of equity. In our own courts, it has been held that the statute of Elizabeth was only declaratory of the common law. Chief Justice Spencer, delivering the opinion of the court, says that <! whenever the act done, takes effect as to some purposes, and is void, as to persons having an interest in impeaching it, the Act is not a nullity, and therefore in a legal sense it is not utterly void, but merely voidable.” Another test of a void act or deed is, that every stranger may take advantage of it, but not of a voidable one. 2 Lev. 218. Fin. Abr. Tit. Void and Toidable, A. pi. 11.
Again, a thing may be void in several degrees. “ 1st. Void so as if never done, to all purposes, so as all persons may take advantage thereof; 2d. Void to some purposes only; 3d. So void by operation of law, that he that will have the benefit of it may make it good.” Now, it is true that a will is an ambulatory instrument, which the testator himself may revoke ; but if a man should make a conveyance of his whole estate to his illegitimate children, can it be thought that he himself could avoid it 1 The Chief Justice refers to the case of Prigg vs. Adams, 2 Salk. 674. The Act of Parliament erecting the Court of Conscience in Bristol, declared that any judgment entered in it for less than 40 s. should be void. The defendant justified as an officer, for arresting the plaintiff under a ca. sa. upon a judgment for 5 s. entered in that court. It was held, that the judgment was not void, but voidable only, by plea or writ of error. The stat. 13 Eliz. c. 10, provided that ecclesiastical leases, made for a longer term than three lives or twenty-one years, should be void. The courts, considering the object of the Act — to prevent ecclesiastical persons from impoverishing their successors — held, that a lease, though for a longer term, should not be void during the life of the Bishop who made it. 1 Blac. Com. 87. It is said, in the case of Talbird and Fripp, 1 Hill Ch. 143, “ when it is said that a deed, good between the parties, is void as to creditors, there is, perhaps, a want of exact precision in the language. They may treat it as void — they are not compelled to institute any legal proceedings to avoid it, but may seize the property as if there were no deed. But until they do seize the property, the deed remains perfectly good.” But the case is much stronger under the Act we are considering, than in any of the instances I have referred to. The Act provides that the gift shall be void, so far as it exceeds one fourth of the donor’s estate, and consequently, that it shall be good to *469 the extent of one fourth. It is impossible to say, without a previous investigation to ascertain if the amount of the gift exceeds the prescribed limit, whether it is void or not. The property is given indiscriminately and in mass ; can you select any portion of it to which the legatee is entitled ? If the will is absolutely void for the excess above one-fourth, then, the property being otherwise undisposed of, it must be distributable under the statute of distributions. Under that, the wife, there being no lawful children, would be entitled to one-half of the overplus. What shall become of the other half? 'Shall I declare it to belong to the next of kin of the testator, for whose benefit, certainly, the Act did not intend to provide, and who do not even claim it ? Suppose that the wife and legitimate children, should agree to accept the provision made for them by the will, and discharge the executor ; if the will were absolutely void, the legatees, even in that case, could maintain no suit upon it, for more than the fouith. Shall the executor retain the overplus 1 or if he should assent and deliver the property, and a stranger should get possession of it, could he defend himself in an action of trover, by shewing that the plaintiff had no title ? To say that there is a right of election, is to say that the instrument is not absolutely void — for that which is absolutely void, is incapable of being confirmed. Will it be said that the widow might.not have taken the provision made for her by the will ? But on a well known principle, if she had done so, she could not claim any thing in opposition to it. Supposing the gift to be voidable only, and that the will is valid until some act is done to avoid it, then, as the widow did no such act in her life time, the question is, whether it is competent for her personal representative now to make the election. Looking to the purposes of the Act, I am of opinion that it is a privilege, personal to the wife and the legitimate children, and that he has no such right of election.
The object of the Act was to provide for the personal support of the wife and legitimate children. It does not avoid the gift to the mistress or illegitimate children, in favor of any other relatives, even grand children. In the case of Smith vs. Farr, decided by me in Charleston in 1829, it was held, that where a person having made such a gift, died, having grand children, they were not within the provisions of the Act. If the wife had died a moment before the testator, there is no doubt but that the testator might have given his whole estate to his illegiti *470 mate children. Regarding the true object of the Act, there seems the same reason to say that the right of election shall be no longer open after the death of the wife, when her support is no longer in question. The Act was not intended for the benefit of her next of kin, strangers to the testator, to the prejudice of those whose claims upon him are certainly stronger than any but those of the wife and legitimate children. In the anonymous case, 2 Eq. Rep. 198, it was held that a wife, who had lived apart from her husband who refused to receive and support her’ could maintain no suit for alimony, after the husband’s death. His refusal was in the nature of a tort, for which no action could be sustained against his representative ; though it was urged that her claim was founded in contract, the support of the wife making part of the contract of marriage. By exact parity of reasoning, the neglect to provide for her support after his death, constitutes the same sort of tort, and when she who has suffered the wrong has passed away, there is the same reason why her representative should maintain no suit for its redress. I will not say but that, by possibility, if the will had contained no provision for the wife, or only an illusory one, there might be ground to conclude that she had elected, during her life time, to take against the will, and that her representative came not for the purpose of avoiding it, but to enforce rights already vested by her election. But here was a very ample provision for her support during life, amounting certainly to more than half the entire income of the estate. But suppose the gift to be absolutely void for the excess beyond one fourth, what standing has the complainant in court, and what interest in the subject of the suit ? It is hardly necessary to say, that to maintain a suit, the party must have some interest to be enforced. If a deed in fraud of creditors were held to be absolutely void, a stranger, who was no creditor, could not come to have it so declared. If there was no effectual disposition of the land, then, upon the testator’s death, one half of the inheritance in the land given to the children beyond the fourth, vested in the wife, if she were capable of taking, and upon her death would go to her heirs. But as she appears to have no heirs who are not aliens, it would remain subject to escheat by the State. The other half would go to the testator’s heirs, if he had any capable of taking, which is also doubtful. But at all events the complainant does not represent his intestate as to her real estate, nor has any interest in it.
*471 Then, as to the personal estate. By a clause of the will which I have quoted, the testator gives all his property which he has not disposed of, to his brothers and sister, or their representatives, making them in every respect his residuary legatees. The Act does not declare the will void which contains an illegal bequest to illegitimate children, but the legacy or devise. Then if the bequest be void, the personal property contained in it passes under the residuary clause, and the residuary legatees are the only persons entitled to it; or if it be only voidable, they are the only persons who have an interest to avoid it. It is hardly necessary to refer to authority for a doctrine so well established, as that a general residuary clause will pass evepy thing that is not effectually disposed of; if a legacy lapses or is void, it will go to the residuary legatee. The case of Durour vs. Motteux, 1 Tes. Sr. 321, was one of a legacy void under the mortmain Act, which was held to pass under the residuary clause ; “for giving the residue includes every thing, let it fall in by reason of the legacy’s being void, or lapsing by dying in the life of the testator.” The case of Kennell vs. Abbott, 4 Ves. 802, was one of a legacy obtained by fraud, which was held to go to the residuary legatee. As is said by Sir William Grant, the master of the Rolls, in Cambridge vs. Rous, 8 Yes. 25, “It has long been settled, that a residuary bequest of personal estate (for it is otherwise as to real) carries not only every thing not disposed of, but every thing that in the event turns out not to be disposed of: not in consequence of any direct or expressed intention, for it may be argued in all cases that particular legacies are separated from the residue, and that the testator does not mean that the residuary legatee should take what is given from him ; no, for he does not contemplate the case ; the residuary legatee is to take only what is left, but that does not prevent the right of the residuary legatee. A presumption arises for the residuary legatee, against every one but the particular legatee. The testator is supposed to give it away from the residuary legatee, only for the sake of the particular legatee.” Then, if I should declare the provisions of the will void at the suit of the complainant, or if his intestate were suing, according to this doctrine, I must declare the property given to the illegitimate children to belong to the residuary legatees. But the testator has imposed a condition, that any devisee or legatee disputing his will, shall forfeit all interest which he maybe entitled to under it. To be sure, the terms, of the condition “shall disturb the same or in *472 any wise interfere or object to the provisions made therein,” are not very definite or intelligeble. But independently of the express condition, on a general well known principle, no person can be permitted to take any benefit under a will without giving effect, so far as depends on him, to all its provisions. Then if the residuary legatees should come to avoid the gift, by the very act of suing they would forfeit all benefit under the will. Now I see plainly enough that here is evasion of the statute. The complainant cannot contest the will (nor could his intestate if living) because he has no interest in doing so, and would take nothing if it should be declared void. The residuary legatees cannot do so, for they can take nothing under the will, without giving effect to its provisions ; and the next of kin (supposing them to be other than the residuary legatees) certainly could not do so, for as against them the residuary legatees are entitled, and it was not for their benefit that the statute was intended to provide. But the difficulty is how I am to avoid this, and whether it is not the imperfection of the statute itself, which necessarily leaves it liable to evasion. We must recollect that the object of the Act is not to protect the wife and legitimate children against strangers. The testator may give the whole of his estate to strangers if he pleases. The Act does not declare the will void which contains such illegal bequest, but only the legacy or devise to the mistress or illegitimate children. Can I say that this residuary bequest is a devise to the illegitimate children 1 The Act does not say that the property illegally devised or bequeathed, shall go to the wife and legitimate children. Can I supply this omission, if it be one ? Declaring the legacy or devise void, it leaves the property to be disposed of according to law. If there were no residuary clause, it would go, under t'he statute of distributions, to the wife and legitimate children, if there were such. There being such a clause, the law is fully as clear that it must pass under that. Shall I say that the residuary clause shall not operate on the property given to the illegitimate children 'l This would be to depart from a perfectly well settled principle of law, and to do in effect what I have before suggested the statute does not do ■ — declare that the property illegally devised shall go to the wife and legitimate children, or there being no legitimate children, that it shall go to the wife and next of kin. Or shall I say that the residuary clause shall be inoperative as to the property *473 illegally bequeathed, only so far as the interests of the wife are concerned ? It would have the same effect of preventing a fraud on the statute, if I should declare that this was an exception to the doctrine of election ; that the condition is void, and that the residuary legatees might avoid the gift to the illegitimate children, and take under and against the will. We may suppose the former course to be more consonant to the policy of the law, though, as I have said, it does not appear to be the policy of the law to protect the wife and children against strangers ; but it appears to me that either course would be equally arbitrary.
One topic was urged on which I think it proper to make some remarks, though it is not necessarily involved in the case, because I believe it is often the subject of great abuse. It was suggested that the present complainant was not entitled to the administration, being neither of kindred to his intestate, nor a creditor, and therefore should not be permitted to carry on the suit. But this did not appear, nor could I take cognizance of the matter in this collateral way. Administration granted to an improper person, is not void, but voidable, (1 Salk. 38,) and application should be made to the ordinary. The case of Thompson vs. Huckett, 2 Hill Ch. 347, was referred to, and I repeat what is said in that case, that under the statutes on the subject, the ordinary is authorized to grant administration to the next'of kin. By ciistom it maybe granted to a creditor. Toll. 'Ex’ors. 104. But in this case, it is requisite that there should be a special citation to the next of kin. If there are neither kindred or creditors, the ordinary is only authorized to grant letters ad colligenda bona, which give no authority to bring suits. 2 Blac. Com. 505. Blackstone ennumerates the order in which the kindred are entitled to administration, and adds that in defect of these, the ordinary either commit administration to some discreet person, as he might have done at common law, before the statute Ed. 3d, or letters ad colligenda. But at common law the administrator had no power to sue ; Plowd. 278. * It is commonly for the purpose of vexatious litigation, that administration is improperly taken out. “If administration be committed to a wrong party, in such case the ordinary may *474 repeal it and grant it to another, for he has not executed his authority, and it is incident to every court to correct its errors Toll. Ex’ors. 125 ; and I think he is bound to do so upon a proper shewing, and if he should refuse, would be compelled by a mandamus from the court of law. The repealing of the administration would of course put an end to suits which he might have brought.
It is ordered and decreed that the bill be dismissed with costs.